**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| CAMBRIDGE WALNUT PARTNERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JUNG H. SON )<br>D/B/A SUNNY CLEANERS, and )<br>JUNG H. SON, )<br>)<br>Defendants. ) | CASE NO. 2:22-cv-59 |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

Plaintiff Cambridge Walnut Partners, LLC, by counsel, for its complaint against defendants Jung H. Son d/b/a Sunny Cleaners and Jung H. Son, alleges and states:

**The Parties**

1. Cambridge Walnut Partners is a limited liability company organized under the laws of Indiana having its principal place of business in Indianapolis, Marion County, Indiana, and owning real property located at 428 173rd Street, Hammond, Lake County, Indiana (the "Property").

2. Central Pacific Properties, LLC, is the sole member of Cambridge Walnut Partners.

3. Central Pacific Properties, LLC, is a limited liability company organized under the laws of Indiana having its principal place of business in Indianapolis, Marion County, Indiana.

4. Stephen R. Henshaw and Dawn Sandoe-Henshaw are the members of Central Pacific Properties, LLC.

5. Stephen R. Henshaw is a citizen of Indiana.

6. Dawn Sandoe-Henshaw is a citizen of Indiana.

7. Sunny Cleaners is an unincorporated entity operated by Jung H. Son and Bang Aun Son having its principal place of business in Hammond, Lake County, Indiana.

8. Jung H. Son is an individual domiciled in Munster, Lake County, Indiana, who previously owned the Property.

## Jurisdiction and Venue

9. This court has personal jurisdiction over the parties because the parties conducted business in Indiana and the actions giving rise to this complaint took place in Indiana and caused harm to an Indiana citizen.

10. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and the state claim arises from the same common nucleus of operative fact.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2).

## Nature of the Case

12. This lawsuit asserts claims under Indiana's Environmental Legal Action Statute, Indiana Code §§ 13-30-9-1 *et seq*. (the "ELA"), and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a)(4)(B) *et seq*. ("CERCLA"), for costs incurred and to be incurred by Cambridge Walnut Partners in responding to the release of hazardous substances at the Property that poses a risk to human health and the environment.

13. In the mid-1980s, Bang Aun Son and Jung H. Son began operating a dry-cleaning business using perchloroethylene ("PCE") at the Property under the name Sunny Cleaners.

14. On August 3, 1988, a Union Perkmatic DE 95 dry-to-dry dry-cleaning machine was installed at the Property.

15. In 2002, Bang Aun Son and Jung H. Son, as husband and wife, took title to the Property.

16. An October 22, 2002, Notice of Violation issued by the Indiana Department of Environmental Management identifies the operator of the Property as "Sunny Cleaners."

17. Dry-cleaning, using PCE, was performed at the Property, by Sunny Cleaners, until at least 2018.

18. Bang Aun Son passed away on October 30, 2018.

19. On May 27, 2020, Jung H. Son submitted a Survivorship Affidavit stating that she took sole title to the Property at Bang Aun Son's death.

20. On May 27, 2020, Cambridge Walnut Partners took title to the Property.

21. During Sunny Cleaners' operations at the Property, Sunny Cleaners purchased, used, handled, stored, and disposed of products containing the hazardous substances discovered at the Property.

22. A June 23, 1992, United States Environmental Protection Agency ("U.S. EPA") *Notification of Regulated Waste Activity* form identifies Sunny Cleaners as the operator at the Property and states that the facility is a generator of "Waste Perchloroethylene."

23. A July 6, 1992, IDEM *Industrial/Hazardous Waste Inspection* form identifies Sunny Cleaners as a generator of PCE at a rate of approximately 15 gallons every three months.

24. The July 6, 1992, report also states that the accumulation of waste occurred at the back of the facility.

25. Inspections of the Property on June 4, 1996, and September 10, 1996, resulted in two *Indiana Drycleaner Compliance Assurance Program* documents that identifies Sunny Cleaners as the operator at the Property.

26. Those forms further state that Sunny Cleaners used a "Union Perkmatic DE Cuct 95 dry to dry drycleaning machine" at the Property.

27. The inspector also noted that there was a "[PCE] odor at the rear of the facility," "the facility used 150-200 lbs of [PCE] per month," and "no leak detection system [for the dry-cleaning machine] was in place."

28. An Agreed Order enclosed within an October 22, 2002, IDEM *Notice of Violation* states that Sunny Cleaners operates at the Property.

29. An *Annual Manifest Summary Report* from Sunny Cleaners identifies three separate shipments of 160 pounds of "hazardous waste" to Saftey Kleen's Dolton facility.

30. A January 20, 2003, *Hazardous Waste Handler Identification* identifies Sunny Cleaners as a generator of hazardous waste.

31. A May 27, 2003, letter from IDEM to Sunny Cleaners states that the facility is a Conditionally Exempt Small Quantity Generator of hazardous waste.

32. A November 14, 2019, *Phase I Environmental Site Assessment* states that staining was observed on the concrete floors in and around the dry cleaning machine; the *Phase I* further states that there was a 55-gallon drum labeled "hazardous waste," and a 50-pound container of "Custom-Care Finish Solvent for PCE dry-cleaning," at the Property.

33. The *Phase I* also states that the "PERK-Matic by Union dry-cleaning machine" was still at the Property.

34. As a part of the *Phase I*, Jonathan Son, the son of Mr. and Mrs. Son, and an employee of Sunny Cleaners, was interviewed; Jonathan Son stated that dry cleaning, using PCE, was performed at the Property by Sunny Cleaners until at least 2018.

35. Sunny Cleaners' historical operations at the Property resulted in hazardous substance contamination at the Property.

36. A *Phase II Limited Site Investigation* (the "LSI") was performed at the Property on November 14, 2019; the purpose of the LSI was to collect soil and groundwater for analysis for hazardous substances, including PCE.

37. This sampling included two borings south of the Property building (DP-1 and DP-2) and two soil borings north of the Site building (DP-3 and DP-4). A fifth soil boring (HA-1) was advanced inside the building adjacent to the dry cleaning machine.

38. PCE was detected above the IDEM soil migration to ground water screening level of 0.045 milligrams per kilogram (mg/kg) in sample DP-1 at a concentration of 0.111 mg/kg and in HA-1 at a concentration of 38.0 mg/kg.

39. PCE was detected in groundwater collected from HA-1 at a concentration of 633 micrograms per liter (µg/L), which is above the IDEM commercial/industrial vapor intrusion ground water screening level ("VIGWSL") of 470 µg/L and the IDEM ground water tap residential screening level ("GWTRSL") of 5 µg/L. PCE was also detected in DP-2 at a concentration of 141 µg/L, which is above the IDEM residential VIGWSL of 110 µg/L, and in DP-1 at a concentration of 61 µg/L, which is above the IDEM GWTRSL. Trichloroethene, a degradation product of PCE, was detected in HA-1 at a concentration of 8.71 µg/L, which is above the IDEM GWTRSL of 5 µg/L.

40. According to the LSI, the highest levels of PCE impacts were detected in the soil from the sample adjacent to the dry-cleaning machine in the southern portion of the building; this is the same location where Sunny Cleaners stored its used PCE and where the inspector in 1996 noted the odor of PCE.

41. Since the contamination was discovered, Cambridge Walnut Partners has incurred, and will continue to incur, environmental response costs in responding to the contamination at the Property, including necessary response costs to remove and remediate the contamination.

42. Cambridge Walnut Partners, by this action, seeks recovery of its response costs, as well as future response costs, incurred by it as a result of Sunny Cleaners' release of contamination at the Property during Jung H. Son's ownership of the Property. Cambridge Walnut Partners also seeks the recovery of its attorneys' fees and court costs incurred in bringing this action.

### Claim for Relief

### Count I
### Indiana Environmental Legal Action

43. Cambridge Walnut Partners incorporates by reference paragraphs 1 through 37 above as though fully set forth herein.

44. Section 13-30-9-2 of the ELA statute reads as follows:

> A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

45. Cambridge Walnut Partners and Sunny Cleaners are "persons" within the meaning of the ELA statute.

46. Sunny Cleaners caused and contributed to the release of hazardous substances into the subsurface soil and groundwater at and around the Property.

47. The subsurface soil and groundwater contamination at and around the Property poses a risk to human health and the environment.

48. Through the work conducted at and around the Property by and on behalf of Cambridge Walnut Partners, Cambridge Walnut Partners has incurred, and will incur, removal and/or remediation costs.

49. Sunny Cleaners is liable to Cambridge Walnut Partners for all costs it has incurred and will incur as a result of the subsurface soil and groundwater contamination at and around the Property, including the attorneys' fees and court costs incurred by Cambridge Walnut Partners in bringing this action.

## Count II
### Comprehensive Environmental Response, Compensation, and Liability Act

50. Cambridge Walnut Partners incorporates by reference paragraphs 1 through 44 above as if fully set forth herein.

51. 42 U.S.C. § 9607(a)(4)(B), commonly referred to as CERCLA Section 107, reads as follows:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other part or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for-

  (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

  (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan (…)

52. 42 U.S.C. § 9601(9) reads as follows: "The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline … or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."

53. 40 CFR § 304.12 (m) reads as follows: "Potentially responsible party or PRP means any person who may be liable pursuant to section 107(a) of CERCLA, 42 U.S.C. 9607(a), for response costs incurred and to be incurred … not inconsistent with NCP."

54. The Property which is the subject of this action is a "facility" as defined under CERCLA.

55. Sunny Cleaners caused or contributed to the release of hazardous substances into the subsurface soil and groundwater at and around the Property and, therefore, is a Potentially Responsible Party as defined in 40 CFR § 304.12(m).

56. Jung H. Son was an owner of the Property at a time of disposal and, therefore, is a Potentially Responsible Party as defined in 42 U.S.C. § 9607(a)(2) and 40 CFR § 304.12(m).

57. Through the work conducted at and around the Property by and on behalf of Cambridge Walnut Partners, Cambridge Walnut Partners has and will incur remediation costs that are consistent with the National Contingency Plan.

58. Sunny Cleaners and Jung H. Son are liable to Cambridge Walnut Partners for all costs it has and will incur as a result of the subsurface soil and groundwater contamination at and around the Property.

## **Prayer for Relief**

WHEREFORE, Cambridge Walnut Partners respectfully requests that the Court:

1. Enter judgment in favor of Cambridge Walnut Partners and against Sunny Cleaners and Jung H. Son;

2. Order Sunny Cleaners and Jung H. Son to pay Cambridge Walnut Partners an amount that will fully and fairly compensate Cambridge Walnut Partners for its past and prospective damages;

3. Order Sunny Cleaners and Jung H. Son to pay Cambridge Walnut Partners for its reasonable attorneys' fees and court costs incurred in bringing this litigation;

4. Declare that Sunny Cleaners and Jung H. Son are obligated to pay all costs, damages, fees, and other expenses, incurred and to be incurred by Cambridge Walnut Partners arising from the environmental contamination at and emanating from the Property;

5. Award Cambridge Walnut Partners all further relief that is just and proper.

Respectfully submitted,

*/s/ David L. Guevara*
David L. Guevara, Atty. No. 26388-49
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
Email: dguevara@taftlaw.com

*Counsel for Plaintiff Cambridge Walnut Partners, LLC*